OPINION
{¶ 1} These cross-appeals arise from the August 30, 2002 judgment of the Common Pleas Court of Defiance County, Ohio, granting summary judgment as to one policy of insurance in favor of the appellees-cross appellants, Dawn Unger, Robert Unger as administrator of the estate of James and Dustyn Unger, and Deb Unger as the administrator of the estate of Cody Unger and as mother and next friend of Jason Unger, as well as granting summary judgment as to a second policy of insurance in favor of the appellant-cross appellee, American Motorists Insurance Company ("AMICO").
 {¶ 2} The relevant facts of this case are undisputed. On October 3, 1997, Dawn Unger was operating a motor vehicle on U.S. 24 in Defiance County, Ohio, when she negligently turned in front of a Greyhound bus, causing a collision between the two vehicles. At the time of the accident, Dawn's husband, James Unger, her son, Dustyn Unger, and her two stepsons, Cody and Jason Unger, were in the vehicle with her. As a result of the accident, James, Dustyn, and Cody were killed. In addition, Dawn and Jason sustained serious bodily injuries.
 {¶ 3} Prior to the accident, James Unger was employed by Sims Manufacturing, Inc. ("Sims") and was a member of the Truck Drivers, Warehousemen and Helpers Union, Local 908. However, on October 2, 1997, one day before the accident that ended his life, James was laid off from Sims. Pursuant to the terms of the collective bargaining agreement ("CBA") between Sims and Local 908, Sims was required to maintain health and life insurance for employees that it laid off for the remainder of the month in which the person was laid off and for the next two months, with a maximum amount of ninety days coverage. In addition, the CBA provided that people who were involuntarily laid-off were to be re-called to open jobs as they occurred providing that the laid-off person had previously performed the job opening up satisfactorily and was physically fit to perform that job.
 {¶ 4} AMICO provided two policies of insurance to Sims at the time of the accident, a Business Auto policy and a Commercial Catastrophe Liability policy. On December 1, 1999, AMICO was first notified of the potential claims of the Unger family arising from the October 3, 1997 accident. AMICO filed a declaratory judgment action regarding the Unger claims on May 4, 2000. Both AMICO and the Ungers filed summary judgment motions. Subsequently, the trial court determined that James Unger was an employee of Sims at the time of the accident and, thus, granted summary judgment in favor of the Ungers as to the Business Auto policy but in favor of AMICO as to the Commercial Catastrophe Liability policy on August 30, 2002. This cross-appeal followed, and AMICO now asserts three assignments of error and the Ungers assert one assignment of error.
AMICO's Assignments of Error
 The Ungers' claims for Coverage Under AMICO's BAP Policy Are Barred Since They Failed to Satisfy the Policy's Preconditions Necessary to Entitle the Ungers, If Insureds, to Coverage.
 The Trial Court Erred In Determining That James Unger Was an Employee of Sims Manufacturing and, Thus, Pursuant to Scott-Pontzer, Was an Insured Under AMICO's BAP Policy As Well As the Remaining Ungers Claiming By Virtue of His Determined Employee Status.
 Even If AMICO Were Liable, Which It Is Not, It Is Entitled to Set Off All Limits Available for Payment to the Ungers.
 The Unger's Assignment of Error The Trial Court Erred in Granting Partial Summary Judgment in Favor of Appellant, American Motorists Insurance Company, as Appellees Are Entitled to Underinsured Motorist Coverage Under the Commercial Catastrophe Liability Policy Issued by the Appellant.
 {¶ 5} Each of these assignments of error pertains to whether the trial court erred in granting summary judgment. The standard for review of a grant of summary judgment is one of de novo review. Lorain Natl.Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Thus, such a grant will be affirmed only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In addition, "summary judgment shall not be rendered unless it appears * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in his favor." Id.
 {¶ 6} The moving party may make his motion for summary judgment in his favor "with or without supporting affidavits[.]" Civ.R. 56(B). However, "[a] party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." Mitseff v. Wheeler
(1988), 38 Ohio St.3d 112, syllabus. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the nonmovant. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 360. Once the moving party demonstrates that he is entitled to summary judgment, the burden then shifts to the non-moving party to show why summary judgment in favor of the moving party should not be had. See Civ.R. 56(E). In fact, "[i]f he does not so respond, summary judgment, if appropriate, shall be entered against him." Id.
 {¶ 7} In the case sub judice, the parties do not dispute the relevant facts. Their controversy concerns the employment status of James Unger and whether the language of the policy provides coverage for the Ungers given this set of facts. Thus, this Court need only determine whether either or both relevant policies entitle the Ungers to coverage as a matter of law pursuant to Scott-Pontzer v. Liberty Mut. Fire Ins.Co. (1999), 85 Ohio St.3d 660, and its progeny.
 {¶ 8} Our analysis of the issues presently before us begins by noting that the well-settled law of Ohio is that "[l]anguage in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer." Buckeye Union Ins. Co. v. Price (1974), 39 Ohio St.2d 95, syllabus. Therefore, absent any ambiguity, the words of a policy must be given their plain and ordinary meaning. Burris v. Grange Mut. Co.
(1989), 46 Ohio St.3d 84, 89.
 {¶ 9} In Scott-Pontzer, the commercial insurance coverage policy in dispute was issued to a corporation, Superior Dairy, Inc., by Liberty Mutual Fire Insurance Company. Scott-Pontzer, 85 Ohio St.3d at 661. The plaintiff, Kathryn Scott Pontzer, asserted a right to underinsured motorist coverage under this policy after her husband, an employee of Superior Dairy, died in an automobile accident. Id. The policy defined the insured as "you" and "if you are an individual, any family member." Id. at 663. However, Liberty Mutual argued that "you" referred only to the named insured, Superior Dairy, and not to Superior Dairy's employees. Id. at 664. The Ohio Supreme Court disagreed and found the term "you" to be ambiguous based on the fact that the insured was a corporation. Id.
 {¶ 10} The Court determined that when a named insured is a corporation, an entity that "can act only by and through real live persons[,]" coverage is not limited solely to the corporate entity, but rather, is extended to the employees of the corporation. Id. The Court rationalized this determination by noting that "[i]t would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle." Id. Therefore, having determined that the policy language was ambiguous, the court "construed [the language] most favorably to the insured" and found that the plaintiff's husband was an insured under his employer's policy. Id. at 665. Thus, it is with this rationale in mind that this Court examines the issues presently before it.
 {¶ 11} As previously noted, the relevant facts are not in dispute. The UM/UIM coverage at issue here in the Business Auto policy defines "who is an insured" as "you" or "if you are an individual, any `family member.'" Thus, the parties do not dispute that this language falls squarely within the ambit of Scott-Pontzer, which would provide coverage not only to Sims, a corporate entity, but also to employees of Sims. However, in its second assignment of error, AMICO maintains that James Unger was not an employee of Sims at the time of the accident because he was laid off one day prior to the accident. To the contrary, the Unger family contends that James was an employee of Sims on the date of the accident pursuant to the terms of the CBA. In order for theScott-Pontzer decision to be applicable to the case sub judice in regards to the Business Auto policy, this Court must first determine whether James was an employee of Sims at the time of his death.
 {¶ 12} The Ohio Supreme Court has previously determined that "[t]he mere absence of a definition in an insurance contract does not make the meaning of the term ambiguous." Nationwide Mut. Fire Ins. Co.v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108. Further, "[a] court must give undefined words used in an insurance contract their plain and ordinary meaning." Id., citing Miller v. Marrocco (1986),28 Ohio St.3d 438, 439. In Guman, the Court determined that the term "employee," although not defined in the insurance contract before it, did have a plain and ordinary meaning and that "for a court to resort to construction of that language" would be unnecessary. Guman,73 Ohio St.3d at 108, citing Karabin v. State Auto. Mut. Ins. Co. (1984),10 Ohio St.3d 163, 166-167. The Court then relied on the definition of "employee" in Black's Law Dictionary to find the plain and ordinary meaning of the term: "Black's Law Dictionary (6 Ed. 1990) 525, defines `employee' as `[a] person in the service of another * * *, where the employer has the power or right to control and direct the employee in the material details of how the work is to be performed. * * * One who works for an employer; a person working for salary or wages.'" Guman,73 Ohio St.3d at 108.
 {¶ 13} In applying this definition to the case before it, the Court held that a high school student who worked at Guman Bros. Farm for both school credit and wages was an employee of the farm. Id. The Court made this determination based on the fact that the farm controlled the jobs he performed for it and directed his work and that the school merely determined whether the farm was an appropriate employer for its occupational work experience program. Id.
 {¶ 14} In the case sub judice, the term "employee" is not mentioned in the UM/UIM coverage, much less is a definition for "employee" provided. Rather, the term becomes part of this policy because of the use of "you" in defining who is an insured, which the Court inScott-Pontzer construed to include employees of a corporation when the corporation is the named insured. Scott-Pontzer, 85 Ohio St.3d at 664. Therefore, the term "employee" is implied through the use of "you;" however, the term remains undefined in the policy. Thus, in accordance with the Court's decision in Guman, as well as basic contract principles, the term "employee" should be given its plain and ordinary meaning in deciding whether James Unger was an employee of Sims at the time of the accident.
 {¶ 15} The Unger family relies upon the CBA between Sims and Local 908 in asserting that James was an employee for purposes of UM/UIM coverage at the time of the accident. The trial court followed the Unger family's logic and concluded that James was an employee because a legal relationship continued to exist between Sims and James notwithstanding the lay-off status in that he retained benefits arising from his employment with Sims. We disagree.
 {¶ 16} The "benefits" that James received pursuant to the CBA were health insurance for the remainder of October (the month in which he was laid off) and the following two months and the right to be re-called in order of seniority and job availability. However, these benefits did not reflect James' status as an employee. Rather, he was eligible to receive these benefits not because James continued to be an employee of Sims but because of his past employment. In essence, although James was eligible to receive these benefits as a part of the CBA due to his employment with Sims from May of 1997 until October 2, 1997, he could not receive them until he was laid off.
 {¶ 17} The undisputed facts reveal that James was paid by Sims on an hourly basis, $9.76 for each hour that he worked. Once James was laid off, Sims no longer paid him wages. In addition, the terms of the CBA did not prevent James from seeking other employment or prohibit him from receiving unemployment compensation benefits. Once laid off, Sims could not require James to report to work at a certain time or to perform any given tasks. Furthermore, although the CBA required Sims to re-call laid-off employees according to seniority and job availability and prevented Sims from hiring new employees into union positions until a re-call was issued, Sims was not required to even issue a re-call if it did not want vacant positions filled. Thus, those who were laid-off had no guarantee that they would ever work at Sims again. Moreover, if Sims did re-call someone to work who it had previously laid-off, that person had the option to refuse for whatever reason. Thus, the CBA essentially provided a right of first refusal to those who were laid-off by Sims. Therefore, James and others like him who were laid-off may never have returned to work at Sims, and they were under no obligation to do otherwise.
 {¶ 18} Given the fact that at the time of the accident James had been laid-off by Sims, no longer received wages from the company, had no guarantee of ever returning to Sims' employ, and Sims no longer had the power or right to control and direct James in any way relating to the company's business, he was not an "employee" of Sims according to the plain and ordinary meaning of that term. Thus, the term "you" in the UM/UIM coverage of the Business Auto policy does not encompass James Unger as an insured. Accordingly, AMICO is not obligated to provide coverage for the October 3, 1997 accident.
 {¶ 19} Our inquiry does not end with the Business Auto policy as the Commercial Catastrophe policy is also at issue. Here, the Ungers maintain that UM/UIM arose by operation of law because it was not properly offered by AMICO and rejected by the insured. In Scott-Pontzer,
the Ohio Supreme Court reaffirmed its holding that "excess liability insurance must comport with R.C. 3937.18 and thus uninsured (and underinsured) motorist coverage must be tendered." Scott-Pontzer,85 Ohio St.3d at 665, citing Duriak v. Globe Am. Cas. Co. (1986), 28 Ohio St.3d 70,72. The failure by the insurer to offer such coverage results in the provision of coverage by operation of law. Scott-Pontzer, supra, citingGyori v. Johnston Coca-Cola Bottling Group, Inc. (1996), 76 Ohio St.3d 565,568.
 {¶ 20} R.C. 3937.18 only requires that UM/UIM coverage be "offered to persons insured under the [liability] policy" of insurance. Bianchiv. Moore (May 11, 2001), 6th App. No. OT-00-007, 2001 WL 34069321, appeal not allowed by (2001), 93 Ohio St.3d 1417 (emphasis added). As indicated by Justice Douglas in Scott-Pontzer: "[i]f we find [the plaintiff] was not an insured under the policies, then our inquiry is at an end."Scott-Pontzer, 85 Ohio St.3d at 662. Therefore, where a party neither expressly nor impliedly qualifies as an insured as defined within an umbrella policy or the underlying policies for which the umbrella policy provides excess coverage, that party is not entitled to be offered and cannot recover UM/UIM coverage by operation of law. See Mazza v. AmericanContinental Ins. Co., 9th App. No. 21192, 2003-Ohio-360, at ¶ 82-92, 2003 WL 187580. Thus, our determination that James Unger was not an employee of Sims at the time of the accident likewise precludes coverage under the Commercial Catastrophe policy because he does not qualify as an insured.
 {¶ 21} Based upon our determination that James Unger was not an employee of Sims, AMICO's second assignment of error is sustained, and the Unger family's assignment of error is overruled. In addition, AMICO's first and third assignments of error are moot as they pertain to matters that only apply to those insured under the two policies.
 {¶ 22} For these reasons, the judgment of the Common Pleas Court of Defiance County, Ohio, is affirmed as to the Commercial Catastrophe Liability policy of insurance and is reversed and the cause remanded as to the Business Auto policy of insurance.
Judgment affirmed in part, reversed in part and cause remanded.
 BRYANT, P.J., and WALTERS, J. concur.